UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

TERELL VIERA,

               Plaintiff,                     **DECISION AND ORDER**

     v.                                 6:17-CV-06844 EAW

M. SHEAHAN, THOMAS LEPKOWSKI,
CHANTIL J. BATES, JOHN A. ROGERS,
and DYLAN J. CAPORICCIO,

               Defendants.
_____

## INTRODUCTION

*Pro se* plaintiff Terell Viera ("Plaintiff"), an inmate in the custody of the New York State Department of Corrections and Community Supervision ("DOCCS"), claims that defendants M. Sheahan ("Sheahan"), Thomas Lepkowski ("Lepkowski"), Chantil J. Bates ("Bates"), John A. Rogers ("Rogers"), and Dylan J. Caporiccio ("Caporiccio") (collectively "Defendants") unconstitutionally interfered with his legal mail while he was housed at the Southport Correctional Facility ("Southport"). (Dkt. 59). Presently before the Court is a motion for summary judgment filed by Sheahan, Rogers, and Caporiccio (collectively "Moving Defendants"). (Dkt. 62). For the reasons that follow, the motion is granted.

## BACKGROUND

The following facts are taken from Moving Defendants' Statement of Undisputed Facts (Dkt. 62-1), and the exhibits submitted in support of the motion. Despite being

afforded several extensions of time to file a response to the pending motion, Plaintiff failed to submit an opposing statement of material facts as required by this District's Local Rules of Civil Procedure.  However, Plaintiff did file a declaration setting forth his version of the relevant events (Dkt. 90), which the Court has reviewed.  Plaintiff's declaration does not contradict the material facts set forth by Moving Defendants and summarized below.  Accordingly, the Court has accepted Moving Defendants' factual assertions to the extent they are supported by the evidence of record.

As noted above, Plaintiff is an inmate in the custody of DOCCS.  (Dkt. 62-1 at ¶ 1).  Sheahan is the former superintendent of Southport, and Rogers and Caporiccio are corrections officers employed by DOCCS.  (*Id.* at ¶ 2).

At the time of the alleged interference with his mail, Plaintiff was serving a sentence in the special housing unit ("SHU") for two incidents of assault at the Clinton Correctional Facility.  (*Id*. at ¶ 3).  Plaintiff had further been sentenced to a cumulative total of 300 days of loss of packages privileges, running from April 27, 2016, to February 21, 2017.  (*Id*. at ¶ 4).

Plaintiff first arrived at Southport in or about June 2016, and was able to send and receive mail without issue.  (*Id*. at ¶ 5).  In early October 2016, Plaintiff sent a letter to an individual named Patty Shanno ("Shanno"), who runs a private typing service in New Jersey.  (*Id*. at ¶¶ 5-6).  Plaintiff received a response from Shanno agreeing to type up papers related to a petition for a writ of habeas corpus Plaintiff had filed in federal court.  (*Id*. at ¶ 5).

- 2 -

On October 30, 2016, Plaintiff attempted to mail to Shanno legal papers including a notice of motion, an affidavit, and a 65-page handwritten memorandum of law. (*Id*. at ¶ 8). Plaintiff placed his papers in a 9x12 inch envelope addressed to Shanno and included an appropriate disbursement form. (*Id*. at ¶ 9). Rogers, who was collecting inmate mail on that date, took the open envelope from Plaintiff, checked it for contraband, and then placed it in the box for outgoing mail. (*Id*. at ¶ 10). Plaintiff's envelope was returned to him the next day, with an affixed note from mailroom staff stating, "You don't have package privileges, you need to break it down in state envelope." (*Id*. at ¶ 11).

Later in the day on October 31, 2016, Plaintiff attempted to mail his papers to Shanno a second time. (*Id*. at ¶ 12). Plaintiff again gave the envelope to Rogers, who stated that he had already tried to send it out for Plaintiff, but would try again. (*Id*.). Plaintiff asked Rogers why his mail was being returned, and Rogers indicated that he did not know and that it was "probably something to do upfront," but that he would put Plaintiff's papers in the mail again. (*Id*. at ¶ 13). Plaintiff's second envelope was returned on November 1, 2016, with an affixed note from mailroom staff stating, "No package privileges per directive and your SHU orientation manual." (*Id*. at ¶ 15).

Plaintiff attempted to mail his papers to Shanno in the same manner a third time. (*Id*. at ¶ 16). Plaintiff's third envelope was returned on November 3, 2016, with a notice stating, "No package privileges . . . only for legal look at your orientation manual and directive 4422-4421. Break it down in state envelope & send it. Thank you." (*Id*. at ¶ 16).

Plaintiff made a final attempt to mail his papers on the evening of November 3, 2016. (*Id*. at ¶ 16). Plaintiff again handed the envelope and the disbursement form to

Rogers. (*Id.*). Plaintiff's envelope was not returned to him after this fourth attempt, nor did he receive a copy of the disbursement form back as proof that his papers had been sent to Shanno. (*Id.* at ¶ 23). Plaintiff does not know what happened to his fourth envelope. (*Id.* at ¶ 26). Plaintiff was transferred out of Southport shortly thereafter. (*Id.* at ¶ 24).

On November 2, 2016, Plaintiff sent a letter to Sheahan complaining that mailroom staff was refusing to mail his papers to Shanno due to his loss of package privileges. (*Id.* at ¶ 17). Sheahan did not respond to this letter. (*Id.* at ¶ 18). Instead, on November 10, 2016, Plaintiff received a response from the Acting Deputy Superintendent of Programs informing him that he could send out his packet of papers "as long as it is addressed to the Courts or an Attorney that is representing you." (*Id.* at ¶ 19).

On November 10, 2016, Plaintiff filed a grievance asserting that "the mailroom staff threw out [his] mail instead of mailing it out." (*Id.* at ¶ 27). During the course of the investigation into this grievance, "mailroom staff responded that Plaintiff did not have package privileges and the mail was sent back to him on November 4, 2016." (*Id.* at ¶ 28).

As security staff at Southport, Rogers and Caporiccio played no role in the processing of mail by mailroom staff. (*Id.* at ¶ 30). Caporiccio was working as a B-block floor officer on November 4, 2016, and one of his responsibilities was to "hand out general mail to the inmates housed" on the floor to which he was assigned. (Dkt. 62-3 at ¶¶ 3, 5).

**PROCEDURAL HISTORY**

Plaintiff commenced this action on December 7, 2017. (Dkt. 1). The operative pleading is the second amended complaint, filed on June 26, 2020. (Dkt. 59).

Moving Defendants filed the instant motion for summary judgment on August 17, 2020. (Dkt. 62).[1] Plaintiff's response deadline was initially set for October 16, 2020 (Dkt. 63), but the Court granted multiple requests by Plaintiff for an extension (Dkt. 75; Dkt. 85), ultimately setting a final response deadline of March 10, 2021 (Dkt. 85).

Plaintiff's response papers are postmarked March 15, 2021, and were received by the Court on March 19, 2021.  (Dkt. 90).  Defendants contend that the response was accordingly untimely.  (Dkt. 93 at 1).   However, the affidavit of service included with Plaintiff's response, which is notarized, indicates that Plaintiff placed the papers in the mailbox at the Auburn Correctional Facility, where he is currently housed, on March 8, 2021.  (Dkt. 90-2 at 1). "Where a prisoner proceeds *pro se*, the filing date is governed by the 'prisoner mailbox rule,' which provides that the effective filing date is the day upon which the prisoner delivers the petition to prison officials for mailing." *Mingo v. United States*, 360 F. Supp. 2d 591, 593 (S.D.N.Y. 2005); *see also Houston v. Lack*, 487 U.S. 266, 276 (1988) (establishing prisoner mailbox rule).  Accordingly, the effective filing date of Plaintiff's response is March 8, 2021, prior to the deadline set by the Court.

Moving Defendants filed their reply on March 29, 2021. (Dkt. 93).

## DISCUSSION

### I.    Legal Standard

Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment should be granted if the moving party establishes "that there is no genuine dispute as to

---

[1]    Nov-moving defendants Bates and Lepkowski were not initially included in this lawsuit, and their deadline for filing dispositive motions is June 8, 2021.  (Dkt. 94).

any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ.

P. 56(a).  The Court should grant summary judgment if, after considering the evidence in

the light most favorable to the nonmoving party, the Court finds that no rational jury could

find in favor of that party.  *Scott v. Harris*, 550 U.S. 372, 380 (2007) (citing *Matsushita*

*Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)).

"The moving party bears the burden of showing the absence of a genuine dispute as

to any material fact. . . ."  *Crawford v. Franklin Credit Mgmt. Corp.*, 758 F.3d 473, 486

(2d Cir. 2014).  "Where the non-moving party will bear the burden of proof at trial, the

party moving for summary judgment may meet its burden by showing the evidentiary

materials of record, if reduced to admissible evidence, would be insufficient to carry the

non-movant's burden of proof at trial."  *Johnson v. Xerox Corp.*, 838 F. Supp. 2d 99, 103

(W.D.N.Y. 2011) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)).  Once the

moving party has met its burden, the opposing party "must do more than simply show that

there is some metaphysical doubt as to the material facts, and may not rely on conclusory

allegations or unsubstantiated speculation."  *Robinson v. Concentra Health Servs., Inc.*,

781 F.3d 42, 44 (2d Cir. 2015) (quoting *Brown v. Eli Lilly & Co.*, 654 F.3d 347, 358 (2d

Cir. 2011)).  Specifically, the non-moving party "must come forward with specific

evidence demonstrating the existence of a genuine dispute of material fact."  *Brown*, 654

F.3d at 358.  Indeed, "the mere existence of *some* alleged factual dispute between the

parties will not defeat an otherwise properly supported motion for summary judgment; the

requirement is that there be no *genuine* issue of *material* fact."  *Anderson v. Liberty Lobby,*

*Inc.*, 477 U.S. 242, 247-48 (1986).

- 6 -

## II.    Plaintiff's Claims against Rogers and Caporiccio

Moving Defendants argue that Plaintiff's claims against Rogers and Caporiccio must be dismissed because these defendants were not personally involved in the alleged refusal to mail Plaintiff's papers to Shanno.  The Court agrees.

Plaintiff's claims are asserted pursuant to 42 U.S.C. § 1983, which provides a cause of action against individuals who, acting under color of state law, deprive an individual of rights, privileges, or immunities secured by the Constitution.  "Personal involvement in the deprivation of a federal constitutional right is the *sine qua non* of liability under § 1983." *Rupp v. City of Buffalo*, No. 17-CV-1209S, 2021 WL 1169182, at *5 (W.D.N.Y. Mar. 29, 2021); *see also Tangreti v. Bachmann*, 983 F.3d 609, 616 (2d Cir. 2020) (a § 1983 plaintiff must establish "that each Government-official defendant, through the official's own individual actions, has violated the Constitution").

"Based in the First Amendment to the U.S. Constitution, a prisoner has a right to reasonable access to the courts while incarcerated to challenge convictions or conditions of confinement."  *Winters v. City of New York*, No. 1:19-CV-07271 (MKV), 2020 WL 4194633, at *3 (S.D.N.Y. July 21, 2020).  "For purposes of Section 1983, to establish the requisite 'personal involvement' of a defendant in a denial-of-access-to-the-courts claim, 'a plaintiff must show that the defendant caused the plaintiff injury or, put less succinctly, that the defendant took or was responsible for actions that had the actual effect of frustrating the plaintiff's effort to pursue a legal claim.'"  *Wilson v. Bradt*, No. 14-CV-6226 CJS, 2018 WL 4409993, at *10 (W.D.N.Y. Sept. 17, 2018) (quoting *Oliva v. Town of Greece*, 630 F. App'x 43, 45 (2d Cir. 2015)).

On the record before the Court, Plaintiff cannot establish that either Rogers or Caporiccio took any action that frustrated his effort to pursue his legal claims. As to Caporiccio, his sole alleged involvement in this case is that he was working as a B-block floor officer on November 4, 2016, and was responsible for handing out general mail. While Plaintiff contends in opposition to the instant motion that Caporiccio did not return his fourth envelope when he "handed out mail to inmates of B-block, 9 gallery on the fourth (4th) of November 2016" (Dkt. 90-1 at 9), this is pure speculation on his part, unsupported by any evidentiary proof. There is no evidence before the Court to support the conclusion that Plaintiff's fourth envelope was in the mail that Caporiccio was given to hand out on November 4, 2016. Indeed, Plaintiff admitted at his deposition that he has no knowledge of what happened to his fourth envelope after he gave it to Rogers. (Dkt. 62-6 at 101). Moreover, in his declaration submitted in opposition to the instant motion, Plaintiff asserts that "<u>mailroom staff</u> . . . never returned the envelope to Plaintiff on November 4th, 2016." (Dkt. 90 at ¶ 29 (emphasis added)). Further, Caporiccio flatly denies, under penalty of perjury, having failed to return Plaintiff's mail. (Dkt. 62-3 at ¶ 9). On these facts, no reasonable jury could conclude that Caporiccio was personally involved in the alleged interference with Plaintiff's attempts to mail his papers to Shanno.

As to Rogers, it is undisputed that on the first three occasions that Plaintiff gave him an envelope addressed to Shanno, Rogers appropriately deposited it in the outgoing mail. It is further undisputed that Rogers had no role in the mailroom's screening and rejection of those envelopes. Plaintiff asserts that Rogers was personally involved in the disappearance of the fourth envelope because "he was the last known person known to

Plaintiff to have taken care, custody and control over Plaintiff's legal envelope before its disappearance." (Dkt. 90-1 at 8). However, Rogers denies, under penalty of perjury, having confiscated, destroyed, failed to process, or failed to return Plaintiff's mail. (Dkt. 62-4 at ¶ 9). Plaintiff has offered no evidentiary proof to contradict this statement by Rogers, and his speculation that Rogers must have engaged in some sort of malfeasance because the fourth envelope was neither returned to him nor delivered to Shanno is insufficient to defeat the instant motion for summary judgment. *See McPherson v. New York City Dep't of Educ.*, 457 F.3d 211, 215 n.4 (2d Cir. 2006) ("Speculation alone is insufficient to defeat a motion for summary judgment.").

In sum, Plaintiff has failed to come forward with any evidence from which a reasonable jury could conclude that either Rogers or Caporiccio personally took action that frustrated Plaintiff's efforts to pursue his legal claims. Rogers and Caporiccio are accordingly entitled to summary judgment on Plaintiff's claims against them.

## III. Plaintiff's Claims Against Sheahan

The Court turns next to Plaintiff's claims against Sheahan. Moving Defendants also argue that Plaintiff cannot establish Sheahan's personal involvement in the claimed violation of his rights. Again, the Court agrees.

"A defendant in a § 1983 action may not be held liable for damages for constitutional violations merely because he held a high position of authority. Rather, the personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." *Victory v. Pataki*, 814 F.3d 47, 67 (2d Cir. 2016) (internal alterations, quotations, and citations omitted). Although in *Colon v. Coughlin*, 58

F.3d 865, 873 (2d Cir. 1995), the Second Circuit identified five categories of evidence that may establish the liability of a supervisory official, more recently, in *Tangreti*, the Second Circuit clarified that "there is no special rule for supervisory liability.  Instead, a plaintiff must plead and prove that each Government-official defendant, through the official's own individual actions, has violated the Constitution."  983 F.3d at 618.  The Second Circuit explained further that "[t]he factors necessary to establish a [§ 1983] violation will vary with the constitutional provision at issue because the elements of different constitutional violations vary," and "[t]he violation must be established against the supervisory official directly."  *Id.* (second alteration in original) (internal quotations and citations omitted).

Here, Plaintiff contends that Sheahan was personally involved in the claimed deprivation of his rights because (1) he did not respond to Plaintiff's letter of November 2, 2016, and (2) he affirmed the denial of Plaintiff's grievance.  (*See* Dkt. 90 at ¶¶ 20-22, 44-47).  These facts are insufficient to establish the requisite personal involvement by Sheahan.

With respect to Sheahan's failure to respond to Plaintiff's letter of November 2, 2016,  "[t]he general rule is that if an official receives a letter from an inmate and passes it on to a subordinate for response or investigation, the official will not be deemed personally involved with respect to the subject matter of the letter[.]"  *Von Stein v. Pruyne*, No. 15-CV-7039 (CS), 2020 WL 3498431, at *13 (S.D.N.Y. June 29, 2020).  Here, the record demonstrates that responsibility for responding to Plaintiff's letter was passed to the Acting Deputy Superintendent of Programs, who sent a response on November 10, 2016.  (*See*

Dkt. 62-8 at 32). Sheahan's receipt of this letter and referral of the matter to a subordinate does not establish his personal involvement in the alleged failure to process Plaintiff's mail.

As to Sheahan's affirmance of the denial of Plaintiff's grievance, "[i]t is clear that affirming the administrative denial of a prison inmate's grievance by a high-level official is insufficient to establish personal involvement under section 1983[.]" *Morales v. Fischer*, 46 F. Supp. 3d 239, 255 (W.D.N.Y. 2014) (quotation omitted). A conclusion to the contrary would lead to "the untenable consequence that virtually every inmate who sues for constitutional torts by prison guards could name the superintendent as a defendant since the plaintiff must pursue his prison remedies" pursuant to the Prison Litigation Reform Act "and invariably the plaintiff's grievance will have been passed upon by the superintendent." *Madison v. Mazzuca*, No. 02 CIV. 10299 RWS, 2004 WL 3037730, at *10 (S.D.N.Y. Dec. 30, 2004) (quotation and alterations omitted). Accordingly, while the record does show that Sheahan affirmed the denial of Plaintiff's grievance (*see* Dkt. 62-8 at 4), this is insufficient, without more, to establish Sheahan's personal involvement in the claimed violation of Plaintiff's rights.

Plaintiff has failed to point to any facts from which a rational jury could find personal involvement by Sheahan. Instead, the record before the Court demonstrates that Plaintiff is attempting to hold Sheahan liable based solely on his position as superintendent at Southport. This is not legally permissible and Sheahan is entitled to summary judgment.

For all these reasons, the Court finds that Moving Defendants are entitled to summary judgment on Plaintiff's claims against them because a reasonable jury could not find that they were personally involved in the alleged violation of Plaintiff's right to access

the courts. Accordingly, the Court does not reach Moving Defendants' alternative arguments that (1) Plaintiff cannot establish that he was actually hindered or impeded from raising nonfrivolous legal claims, (2) Plaintiff has failed to exhaust his administrative remedies, (3) they are entitled to qualified immunity, and (4) Plaintiff's claims are barred pursuant to *Heck v. Humphrey*, 512 U.S. 477 (1994). (*See* Dkt. 62-10 at 10-18).

## CONCLUSION

For the foregoing reasons, Moving Defendants' motion for summary judgment (Dkt. 62) is granted, and Plaintiff's claims against defendants Sheahan, Rogers, and Caporiccio are dismissed. The Clerk of Court is directed to terminate Sheahan, Rogers, and Caporiccio as defendants in this matter.

SO ORDERED.


ELIZABETH A. WOLFORD
United States District Judge


Dated:      March 31, 2021
            Rochester, New York