UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

TERELL VIERA,

             Plaintiff,

v.

THOMAS LEPKOWSKI
and CHANTIL J. BATES,

             Defendants.
_____

**DECISION AND ORDER**

6:17-CV-06844 EAW

## INTRODUCTION

*Pro se* plaintiff Terell Viera ("Plaintiff"), an inmate in the custody of the New York State Department of Corrections and Community Supervision ("DOCCS"), claims that defendants M. Sheahan ("Sheahan"), Thomas Lepkowski ("Lepkowski"), Chantil J. Bates ("Bates"), John A. Rogers ("Rogers"), and Dylan J. Caporiccio ("Caporiccio") unconstitutionally interfered with his legal mail while he was housed at the Southport Correctional Facility ("Southport"). (Dkt. 59). On March 3, 2021, the Court granted summary judgment for Sheahan, Caporiccio, and Rogers (collectively "Terminated Defendants"). (Dkt. 95). Presently before the Court is a motion for summary judgment filed by Bates and Lepkowski (collectively "Moving Defendants"). (Dkt. 96). For the reasons that follow, the motion is granted.

## BACKGROUND

The following facts are taken from Moving Defendants' Statement of Undisputed Facts (Dkt. 96-1) and the exhibits submitted in support of the motion.  Plaintiff failed to submit an opposing statement of material facts as required by this District's Local Rules of Civil Procedure.  However, Plaintiff filed a declaration (Dkt. 90) setting forth his version of the relevant events in his response to Terminated Defendants' motion for summary judgment (Dkt. 62), which the Court reviewed in connection with that motion.  On November 12, 2021, the Court received a letter dated March 6, 2021 but postmarked November 10, 2021, stating that Plaintiff had accessed the Court's Decision and Order granting summary judgment for the Terminated Defendants.  (Dkt. 98).  The letter states that Plaintiff's filing in response to Terminated Defendants' motion directed facts toward his claims against Moving Defendants, which were not addressed in the Decision and Order granting Terminated Defendants' motion for summary judgment.  (*Id.* at 1-2).  Because Plaintiff's declaration addresses facts relevant to the instant motion for summary judgment, the Court has considered Plaintiff's declaration as if it were filed in response to the instant motion.

Plaintiff's declaration does not contradict the material facts set forth by Moving Defendants as summarized below.  Accordingly, the Court has accepted Moving Defendants' factual assertions to the extent they are supported by the evidence of record.

As noted above, Plaintiff is an inmate in the custody of DOCCS.  (Dkt. 96-1 at ¶ 1). Lepkowski is a retired education supervisor at Southport Correctional Facility ("Southport") who served occasionally as Acting Deputy Superintendent of Programs.

At the time of the alleged interference with his mail, Plaintiff was serving a sentence in the special housing unit ("SHU") for two incidents of assault on inmates and assault on staff at the Clinton Correctional Facility.  (*Id.* at ¶ 4).  Plaintiff had further been sentenced to a cumulative total of 300 days of loss of package privileges, running from April 27, 2016, to February 21, 2017.  (*Id.* at ¶ 5).

Plaintiff first arrived at Southport in or about June 2016 and was able to send and receive mail without issue.  (*Id.* at ¶ 6).  In early October 2016, Plaintiff sent a letter to an individual named Patty Shanno ("Shanno")[1], who runs a private typing service in New Jersey called The Word Station.  (*Id.* at ¶¶ 6-7).  Plaintiff received a response from Shanno agreeing to type up papers related to a petition for a writ of habeas corpus Plaintiff had filed in federal court.  (*Id.* at ¶ 6).

On October 30, 2016, Plaintiff attempted to mail to Shanno legal papers including a notice of motion, an affidavit, and a 65-page handwritten memorandum of law.  (*Id.* at ¶ 11).  Plaintiff placed his papers in a 9x12 inch envelope addressed to Shanno and included an appropriate disbursement form.  (*Id.* at ¶ 12).  Bates, who worked in the mailroom, weighed the envelope and found that it weighed more than 13 ounces, which she knew to mean that it could not be sent via First Class Mail.  (*Id.* at ¶¶ 2, 13).  Instead, it would need to be mailed as a Priority Mail package.  (*Id.* at ¶ 13).  Plaintiff's envelope was returned to

---

[1]     The transcript of Plaintiff's deposition refers to Shanno as "Patty Shannon."  (*See* Dkt. 96-5 at 5-231).  The Court will refer to this individual as "Shanno" as she is named in Moving Defendants' moving papers and Plaintiff's response to Terminated Defendants' motion.  (*See* Dkt. 96-6 at 2 n.2; *see, e.g.*, Dkt. 90 at 3).

him the next day with an affixed note from Bates stating, "You don't have package privileges, you need to break it down in state envelope."  (*Id*. at ¶ 15).

Later in the day on October 31, 2016, Plaintiff attempted to mail his papers to Shanno a second time.  (*Id*. at ¶ 16).  Plaintiff's second envelope was returned on November 1, 2016, with an affixed note from Bates stating, "No package privileges per directive and your SHU orientation manual."  (*Id*. at ¶ 17).

Plaintiff attempted to mail his papers to Shanno in the same manner a third time on November 3, 2016.  (*Id*. at ¶ 18).  Plaintiff's third envelope was returned on November 3, 2016, with a notice stating, "No package privileges . . . only for legal look at your orientation manual and directive 4422-4421.  Break it down in state envelope & send it. Thank you."  (*Id*.).

Plaintiff made a final attempt to mail his papers on the evening of November 3, 2016.  (*Id*. at ¶ 21).  On November 4, 2016, Bates weighed the package and wrote a note to Plaintiff explaining that the mailing did not comply with DOCCS procedures and placed the note and package in a bag to be returned to Plaintiff.  (*Id.* at ¶ 22).

Plaintiff alleges that the envelope was not returned to him after this fourth attempt, nor did he receive a copy of the disbursement form as proof that his papers had been sent to Shanno.  (*Id*. at ¶ 23).  Plaintiff was transferred out of Southport shortly thereafter.  (*Id*. at ¶ 24).

On November 2, 2016, Plaintiff sent a letter to Sheahan complaining that mailroom staff was refusing to mail his papers to Shanno due to his loss of package privileges.  (*Id*. at ¶ 19).  Sheahan did not respond to this letter.  (*See id*. at ¶ 20).  Instead, on November

10, 2016, Plaintiff received a response from Lepkowski informing him that he could send out his packet of papers "as long as it is addressed to the Courts or an Attorney that is representing you." (*Id*.).

On November 10, 2016, Plaintiff filed a grievance related to the missing package. (*Id*. at ¶ 27). Plaintiff testified at his deposition that he does not know what happened to the package, but that "it was never returned to [him]. It could have been destroyed." (*Id*. at ¶ 26). Plaintiff claimed, "officers here destroys [sic] things" and further "figured—if they didn't come back to [him], it's either destroyed or [Southport staff] never processed it." (*Id*.).

Bates responded to the grievance, stating that she returned the documents to Plaintiff. (*Id*. at ¶ 27). Plaintiff testified that he never successfully mailed the documents to Shanno. (*Id*. at ¶ 30). On January 4, 2017, Plaintiff wrote to Sheahan and Deputy Superintendent of Programs A. Lowe to gain access to a package from The Word Station, Shanno's typing service, which Plaintiff claimed contained his habeas corpus petition. (*Id*. at ¶ 31). Plaintiff was given access to the package, but he no longer possesses the materials. (*Id*. at ¶ 33). Plaintiff later testified that the package did not contain the petition as he had stated. (*Id*. at ¶ 32). On February 9, 2017, Plaintiff filed a habeas corpus petition in the Eastern District of New York, which included a typed 27-page memorandum of law. (*Id*. at ¶ 34).

## PROCEDURAL HISTORY

The Court set forth the procedural history of this action in its Decision and Order granting Terminated Defendants' motion for summary judgment issued on March 31, 2021. (Dkt. 95 at 4-5).  Because of which, the Court will address only the procedural history bearing on the instant motion for summary judgment.  Plaintiff filed the second amended complaint (Dkt. 59) on June 26, 2020, which is the operative pleading.  Moving Defendants were not immediately served with the second amended complaint.  (*See* Dkt. 68 at 1-2; Dkt. 71; Dkt. 72).  Plaintiff sought leave to serve Moving Defendants (Dkt. 64), which United States Magistrate Judge Marian W. Payson granted on September 17, 2020 (Dkt. 68).  On March 29, 2021, defense counsel requested by letter that Magistrate Judge Payson declare discovery closed with respect to Moving Defendants and set a schedule for dispositive motions.  (Dkt. 92).  Magistrate Judge Payson set dispositive motions due on June 8, 2021.  (Dkt. 94).  Moving Defendants filed the instant motion for summary judgment on June 8, 2021. (Dkt. 96).  The Court set responses due by August 9, 2021, and replies due on August 23, 2021.  (Dkt. 97).

Plaintiff did not file a response to the instant motion on or before August 9, 2021, as the Court ordered. (*See* Dkt. 97).  Instead,  Plaintiff sent a letter to the Court, discussed briefly above, in which Plaintiff states that he did not receive a copy of the Court's Decision and Order granting Terminated Defendants' motion for summary judgment.  (Dkt. 98 at 1).  He further stated that he learned about the Court's decision in the course of conducting research on Westlaw related to another proceeding involving Plaintiff.  (*Id.*).  However, the docket indicates that a copy of the Court's Decision and Order was mailed to Plaintiff on

March 31, 2021.  Furthermore, Moving Defendants' motion for summary judgment includes a certificate of service dated June 8, 2021, which indicates that Moving Defendants' papers were served on Plaintiff by mail at Auburn Correctional Facility (Dkt. 96-7), which reflects Plaintiff's address as of the time the motion was filed (*see* Dkt. 73). The Court also notes that Plaintiff's letter is dated March 6, 2021.  (Dkt. 98 at 1).  However, the letter discusses events that took place on March 8, 2021, and thereafter.  (*See id.* at 1-2).  As such, the March 6, 2021 date appears to be erroneous.  Although the letter is not a substantive response and is untimely, the letter indicates that Plaintiff directed factual assertions towards Moving Defendants in his response to Terminated Defendants' motion for summary judgment.  (Dkt. 98 at 1-2).  As discussed above, the Court has considered the factual assertions set forth in his declaration.  (Dkt. 90).  Because the facts set forth in Plaintiff's declaration do not contradict the facts set forth in Moving Defendants' statement of material facts not in dispute, the Court deems those facts admitted.  *See* L. R. Civ. P. 56(a)(2).

## DISCUSSION

### I.  Legal Standard

Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment should be granted if the moving party establishes "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The Court should grant summary judgment if, after considering the evidence in the light most favorable to the nonmoving party, the Court finds that no rational jury could

find in favor of that party.  *Scott v. Harris*, 550 U.S. 372, 380 (2007) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)).

"The moving party bears the burden of showing the absence of a genuine dispute as to any material fact. . . ."  *Crawford v. Franklin Credit Mgmt. Corp.*, 758 F.3d 473, 486 (2d Cir. 2014).  "Where the non-moving party will bear the burden of proof at trial, the party moving for summary judgment may meet its burden by showing the evidentiary materials of record, if reduced to admissible evidence, would be insufficient to carry the non-movant's burden of proof at trial."  *Johnson v. Xerox Corp.*, 838 F. Supp. 2d 99, 103 (W.D.N.Y. 2011) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)).  Once the moving party has met its burden, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts, and may not rely on conclusory allegations or unsubstantiated speculation."  *Robinson v. Concentra Health Servs., Inc.*, 781 F.3d 42, 44 (2d Cir. 2015) (quoting *Brown v. Eli Lilly & Co.*, 654 F.3d 347, 358 (2d Cir. 2011)).  Specifically, the non-moving party "must come forward with specific evidence demonstrating the existence of a genuine dispute of material fact."  *Brown*, 654 F.3d at 358.  Indeed, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).

## II.   Plaintiff's Claims against Bates

Moving Defendants argue that Plaintiff's claim against Bates must be dismissed because, to the extent Plaintiff alleges that his mail was destroyed, interfering with

Plaintiff's access to the courts, Bates was not personally involved in any destruction of Plaintiff's material.  (Dkt. 96-6 at 8-9).

Plaintiff's claims are asserted pursuant to 42 U.S.C. § 1983, which provides a cause of action against individuals who, acting under color of state law, deprive an individual of rights, privileges, or immunities secured by the Constitution.  "Personal involvement in the deprivation of a federal constitutional right is the *sine qua non* of liability under § 1983." *Rupp v. City of Buffalo*, No. 17-CV-1209S, 2021 WL 1169182, at *5 (W.D.N.Y. Mar. 29, 2021); *see also Tangreti v. Bachmann*, 983 F.3d 609, 616 (2d Cir. 2020) (a § 1983 plaintiff must establish "that each Government-official defendant, through the official's own individual actions, has violated the Constitution").

"Based in the First Amendment to the U.S. Constitution, a prisoner has a right to reasonable access to the courts while incarcerated to challenge convictions or conditions of confinement." *Winters v. City of N.Y.*, No. 1:19-CV-07271 (MKV), 2020 WL 4194633, at *3 (S.D.N.Y. July 21, 2020).  "For purposes of Section 1983, to establish the requisite 'personal involvement' of a defendant in a denial-of-access-to-the-courts claim, 'a plaintiff must show that the defendant caused the plaintiff injury or, put less succinctly, that the defendant took or was responsible for actions that had the actual effect of frustrating the plaintiff's effort to pursue a legal claim.'"  *Wilson v. Bradt*, No. 14-CV-6226 CJS, 2018 WL 4409993, at *10 (W.D.N.Y. Sept. 17, 2018) (quoting *Oliva v. Town of Greece*, 630 F. App'x 43, 45 (2d Cir. 2015)).  "Mere delay in being able to work on one's legal action or communicate with the courts does not rise to the level of a constitutional violation." *Davis v. Goord*, 320 F.3d 346, 352 (2d Cir. 2003) (citation and quotation marks omitted).  The

alleged conduct must be both "deliberate and malicious."  *Thomas v. Decastro*, No. 14-CV-6409 (KMK), 2019 WL 1428365, at *6 (S.D.N.Y. Mar. 29, 2019) (citation omitted).

Plaintiff alleges that Bates, after inspecting the contents of Plaintiff's mailing directed to Shanno, "refused to process the envelope containing Plaintiff's memorandum of law and petition for a writ of habeas corpus[,]" returning the mailing with a notice that Plaintiff had lost package privileges as a result of his sentence to the SHU.  (Dkt. 59 at 6). Plaintiff claims that his mailing of October 31, 2016, was "censored and read, and not processed by defendants" without a legitimate need to prevent a threat to security in the facility.  (*Id.* at 11).

Based on the record before the Court, there is no evidence that would support the conclusion that Bates was personally involved in the alleged destruction of Plaintiff's mail. Indeed, Bates declared, under penalty of perjury, that Plaintiff's mailings were not marked as legal mail and were not addressed to a court or to an attorney.  (Dkt. 96-3 at ¶ 9).  Bates further declared that the fourth time she did not process Plaintiff's oversized enveloped to Shanno, she placed the mailing in the mail bag for it to be returned to Plaintiff, as she had done three times previously, and she did not destroy it.  (Dkt. 96-3 at ¶¶ 8, 11).

Plaintiff's affidavit in opposition to Terminated Defendants' motion for summary judgment asserts merely that Bates's "account of the even[t] is not adding up to be taken as truth."  (Dkt. 90 at ¶ 43).  However, Plaintiff has submitted no evidence that Bates was responsible for the alleged loss or destruction of the materials, which is insufficient to survive the instant summary judgment motion.  *See McPherson v. N.Y.C. Dep't of Educ.*,

457 F.3d 211, 215 n.4 (2d Cir. 2006) ("Speculation alone is insufficient to defeat a motion for summary judgment.").

To the extent that Plaintiff alleges that Bates refusing to process Plaintiff's oversized envelope to Shanno constitutes interference with Plaintiff's access to the courts, Bates is also entitled to summary judgment.  The record indicates that Plaintiff attempted to mail a 9x12 envelope to Shanno's typing service that, because of its weight, must be mailed as a package, and Plaintiff had lost package privileges as a result of his confinement in the SHU. (Dkt. 96-1 at ¶¶ 4, 5, 12).  As such, Bates wrote four notes—one on each mailing— indicating to Plaintiff that she was unable to process the mailing as it weighed 13 ounces, and he had lost his package privileges.  (*Id.* at ¶¶ 15, 17, 18, 22).  Because of this restriction, Bates informed Plaintiff on at least two of the four occasions Plaintiff attempted to send the package that he could send the materials to Shanno if he broke them down into smaller envelopes.  (*See* Dkt. 96-1 at ¶¶ 15, 18).

As discussed above, inmates have a right to access the courts rooted in the First Amendment.  *Winters*, 2020 WL 4194633, at *3.  This constitutional right has given rise to derivative rights, including the right to receive legal mail.  *See Cancel v. Goord*, No. 00 Civ. 2042, 2001 WL 303713, at *4 (S.D.N.Y. Mar. 29, 2001); *see also Benjamin v. Fraser*, 264 F.3d 175, 185 (2d Cir. 2001) (explaining the difference between derivative and constitutional rights).  "[T]o establish a violation of the right to court access, an inmate must establish both a deliberate and malicious violation of one of these derivative rights and that the violation caused or will cause the prisoner actual injury, in the sense that a nonfrivolous legal claim had been frustrated or was being impeded due to the actions of

prison officials." *Amaker v. Haponik*, No. 98 CIV. 2663 (JGK), 2002 WL 523385, at *8 (S.D.N.Y. Mar. 29, 2002) (internal quotation marks omitted) (citing *Warburton v. Underwood*, 2 F. Supp. 2d 306, 312 (W.D.N.Y. 1998)), *aff'd*, 125 F. App'x 375 (2d Cir. 2005).

Plaintiff has put forth no evidence that Bates's conduct was deliberate or malicious. Indeed, Bates declared, under penalty of perjury, that she "enforced DOCCS policies and had no intention of interfering with Plaintiff's access to courts or free flow of mail." (Dkt. 96-3 at ¶ 14). Bates's notes to Plaintiff, which stated that he could send his habeas corpus materials to Shanno in envelopes that complied with the mailing restriction imposed as a result of his sentence to the SHU, do not indicate an attempt to frustrate Plaintiff's pursuit of his legal claim. Nor does Bates's enforcement of the restriction on packages constitute a constitutional violation as it "was reasonably related to the legitimate penological interests of enforcing the rules of inmate discipline[.]" *Amaker*, 2002 WL 523385, at *9 (citing *Frazier v. Coughlin*, 81 F.3d 313, 315-17 (2d Cir. 1996) (holding loss of packages and other privileges is not a constitutional violation)).

Furthermore, Bates's conduct did not have the "actual effect of frustrating [Plaintiff's] effort to pursue a legal claim." *Wilson*, 2018 WL 4409993, at *10. "The actual injury requirement ensures that courts provide relief to claimants only when they have suffered or will imminently suffer actual harm and prevents courts from undertaking tasks assigned to the other political branches." *Sheppard v. Lee*, No. 10 Civ. 6696(GBD)(JLC), 2011 WL 5314450, at *3 (S.D.N.Y. Nov. 7, 2011) (quotation marks omitted) (quoting *Collins v. Goord*, 581 F. Supp. 2d 563, 573 (S.D.N.Y. 2008)), *adopted by*, 2011 WL

6399516 (S.D.N.Y. Dec. 20, 2011).  In order to set forth an actual injury where a plaintiff alleges interference with legal mail, a defendant must "[have taken] or [have been] responsible for actions that hindered a plaintiff's efforts to pursue a legal claim." *Montanez v. Cuoco*, 361 F. App'x 291, 294 (2d Cir. 2010) (summary order) (citation omitted).  "Mere delay in being able to work on one's legal action or communicate with the courts does not rise to the level of a constitutional violation."  *Davis*, 320 F.3d at 352 (citation and quotation marks omitted).

Plaintiff alleges that Southport officials "intentionally and malicious[ly]" applied the limitation on Plaintiff's mailing, which "actually hindered Plaintiff['s] pursuit of many nonfrivolous legal claims[] and caused actual injury" to Plaintiff's exercise of his constitutional right to access the courts.  (Dkt. 59 at 7).  Plaintiff further alleges that he "was denied the right to submit" a petition for a writ of habeas corpus "in a timely manner[,] within the 1 year and 90 day[] deadline[,] which was to challenge the criminal conviction as being unconstitutional[.]"  (Dkt. 59 at 10, 12).  He asserts that his habeas corpus petition was denied because Southport staff refused to process his mailing and ultimately confiscated it.  (Dkt. 90 at ¶¶ 48-49).  The lost document, Plaintiff claims, contained arguments related to seven issues, of which he was only able to reproduce four in the amended habeas corpus petition that he ultimately filed.  (*Id.*).

To the extent that Plaintiff alleges that Bates's actions resulted in the confiscation or destruction of his habeas corpus petition, as discussed above, this allegation is unsupported by the record.  As such, the argument that Plaintiff was unable to assert certain arguments in his amended habeas corpus petition cannot be attributed to Bates.

Regarding the timeliness of Plaintiff's filing, a review of the docket in Plaintiff's underlying habeas corpus matter, *Viera v. Sheahan*, 1:16-cv-0408-KAM (E.D.N.Y.) (the "Habeas Action"), indicates that Plaintiff submitted a typed, 27-page memorandum of law and a number of other materials in support of his motion to amend his habeas corpus petition on February 9, 2017.[2]  (Habeas Action Dkt. 18).  On February 16, 2017, United States District Judge Kiyo A. Matsumoto granted Plaintiff's motion to amend his habeas corpus petition.  Judge Matsumoto subsequently determined that Plaintiff's amended petition was timely filed (Habeas Action Dkt. 31 at 8 n.2), and Plaintiff's habeas corpus petition was denied after consideration on the merits (*id.* at 1, 35-36).  Although Plaintiff alleges that the injury inflicted upon him was denial of the right to timely file a habeas petition  (Dkt. 59 at 10, 12), his petition was timely (*see* Habeas Action Dkt. 31. at 8 n.2).  As such, no injury resulted from any delay allegedly caused by Moving Defendants.  *See Sheppard*, 2011 WL 5314450, at *4 (collecting cases).

---

[2]     "A court may take judicial notice of a document filed in another court not for the truth of the matters asserted in the other litigation but rather to establish the fact of such litigation and related filings." *Glob. Network Commc'ns v. City of N.Y.*, 458 F.3d 150, 157 (2d Cir. 2006) (citation omitted).  The Second Circuit has cautioned that "[f]acts adjudicated in a prior case do not meet either test of indisputability contained in Rule 201(b): they are not usually common knowledge, nor are they derived from an unimpeachable source." *Int'l Star Class Yacht Racing Ass'n v. Tommy Hilfiger U.S.A., Inc.*, 146 F.3d 66, 70 (2d Cir. 1998).  However, the Court does not take notice of the facts underlying Judge Matsumoto's determination.  Rather, the Court takes notice merely of Judge Matsumoto's finding that Plaintiff's amended habeas corpus petition was timely, which is "not subject to dispute[,]" and it "can be accurately and readily determined" from the docket, "whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b)(2). The Court considers the finding only insofar as it indicates that Plaintiff's amended habeas corpus petition was permitted to proceed to consideration on the merits (*see* Habeas Action Dkt. 31 at 8 n.2), and Plaintiff thereby did not suffer actual injury as a result of any alleged delay.

Fundamentally, Plaintiff was not denied the right to pursue his habeas corpus petition. Plaintiff was denied the ability to mail the materials constituting his habeas corpus petition to The Word Station in a single 9x12 envelope weighing more than 13 ounces. Plaintiff was permitted to mail his materials in smaller envelopes that did not violate the weight restriction. Plaintiff, without explanation, opted not to do so. Plaintiff essentially asserts that he is constitutionally entitled to mail his habeas corpus petition to a typing service in whatever form he chooses. However, the right to access courts does not entail unrestricted access to mail legal material to non-attorneys. *See, e.g.*, *Amaker*, 2002 WL 523385, at *9 (holding that policy of restricting packages from plaintiff's mother containing legal documents did not constitute unreasonable interference with access to courts). Accordingly, the record does not support a finding that restricting the weight of Plaintiff's mailings, where not mailed to a court or attorney and where related to Plaintiff's disciplinary sentence, constitutes an unreasonable restriction of Plaintiff's access to courts. *See id*.

Bates declared that if Plaintiff had been mailing properly labeled legal materials to a court or attorney, Plaintiff would have been permitted to submit these materials. (Dkt. 96-3 at ¶ 11). Indeed, Southport's mail logbook shows that Plaintiff received legal mail in October and November 2016—the time during which Southport mailroom staff allegedly hindered his ability to pursue his habeas corpus petition. (*Id.* at 29-39). Plaintiff has established, at most, that he was inconvenienced by the mailing restriction, which is insufficient to support a § 1983 claim of denial of access to the courts. *See Wesolowski v. Washburn*, 615 F. Supp. 2d 126, 129 (W.D.N.Y. 2009) (granting summary judgment for

defendants where plaintiff failed to respond or show that defendants actually hindered efforts to pursue a legal claim).  Accordingly, Bates is entitled to summary judgment on Plaintiff's claim that she interfered with his access to courts.

Plaintiff also alleges that Bates interfered with the free flow of Plaintiff's mail.  (Dkt. 59 at 11).  "In addition to the right of access to the courts, a prisoner's right to the free flow of incoming and outgoing mail is protected by the First Amendment."  *Davis*, 320 F.3d at 351.  "Restrictions on prisoners' mail are justified only if they 'further[] one or more of the substantial governmental interests of security, order, and rehabilitation . . . [and] must be no greater than is necessary or essential to the protection of the particular governmental interest involved.'"  *Id.* (alterations in original) (quoting *Washington v. James*, 782 F.2d 1134, 1139 (2d Cir. 1986)).  "[A]s few as two incidents of mail tampering could constitute an actionable violation (1) if the incidents suggested an ongoing practice of censorship unjustified by a substantial government interest, or (2) if the tampering unjustifiably chilled the prisoner's right of access to the courts or impaired the legal representation received."  *Id.* (citing *Washington*, 782 F.2d at 1139).

Plaintiff has not submitted any evidence showing a practice of censorship unjustified by a government interest or that tampering unjustifiably chilled his access to the courts or impaired legal representation.  *See id.*  Plaintiff alleged that his October 31, 2016 mailing was "censored and read, and not processed by defendants" without a legitimate necessity to prevent a threat to security in the facility.  (Dkt. 59 at 11).  However, Plaintiff was serving a sentence in the SHU related to two incidents of assault on inmates and an instance of assault on staff.  (Dkt. 96-1 at ¶¶ 4-5).  As a result of which, Plaintiff

was denied package privileges.  (*Id.*).  The record before the Court does not indicate, as Plaintiff alleges, that Bates unjustifiably censored Plaintiff's mail or that Bates tampered with Plaintiff's right of access to the courts or access to legal representation.

Rather, the record before the Court demonstrates that Bates informed Plaintiff that because of his loss of package privileges, Plaintiff would need to mail his habeas corpus materials to Shanno in smaller envelopes that complied with the weight restrictions imposed as a result of his sentence to the SHU.  (*See* Dkt. 96-1 at ¶¶ 15, 17, 18, 22).  Plaintiff did not label his mailing as legal mail, and the materials were not addressed to a court or to an attorney.  (Dkt. 96-3 at ¶ 9).  Bates did not believe Plaintiff's mailings were privileged material, and she did not treat them as such.  (*Id.*).  Bates declared, under penalty of perjury, that she did not destroy Plaintiff's materials and she had no intention of interfering with his access to courts or the free flow of his mail.  (*Id.* at ¶ 14).  As discussed above, a loss of package privileges related to a sentence to a SHU is "reasonably related to the legitimate penological interests of enforcing the rules of inmate discipline[.]" *Amaker*, 2002 WL 523385, at \*9.

Ultimately, Plaintiff has failed to support with admissible evidence his allegation that Bates's conduct, rather than Plaintiff's own refusal to comply with the package limitation imposed as part of Plaintiff's sentence, frustrated Plaintiff's ability to send his habeas corpus petition to a typing service.  Accordingly, Bates is entitled to summary judgment on Plaintiff's claims against her.

### III.   Plaintiff's Claims Against Lepkowski

The Court next addresses Plaintiff's claims against Lepkowski.  Moving Defendants argue that Plaintiff cannot establish Lepkowski's personal involvement in the claimed violation of his rights.  The Court agrees.

"A defendant in a § 1983 action may not be held liable for damages for constitutional violations merely because he held a high position of authority.  Rather, the personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." *Victory v. Pataki*, 814 F.3d 47, 67 (2d Cir. 2016) (internal alterations, quotations, and citations omitted).  Although in *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995), the Second Circuit identified five categories of evidence that may establish the liability of a supervisory official, more recently, in *Tangreti*, the Second Circuit clarified that "there is no special rule for supervisory liability.  Instead, a plaintiff must plead and prove that each Government-official defendant, through the official's own individual actions, has violated the Constitution."  983 F.3d at 618.  The Second Circuit explained further that "[t]he factors necessary to establish a [§ 1983] violation will vary with the constitutional provision at issue because the elements of different constitutional violations vary," and "[t]he violation must be established against the supervisory official directly."  *Id*. (second alteration in original) (internal quotations and citations omitted).  As discussed above, to "establish the requisite 'personal involvement' of a defendant in a denial-of-access-to-the-courts claim, 'a plaintiff must show that the defendant caused the plaintiff injury or, put less succinctly, that the defendant took or was responsible for actions

that had the actual effect of frustrating the plaintiff's effort to pursue a legal claim.'"
*Wilson*, 2018 WL 4409993, at *10 (W.D.N.Y. Sept. 17, 2018) (citation omitted).

Plaintiff contends that Lepkowski was involved in the claimed deprivation of his
rights because Lepkowski wrote a letter responding to Plaintiff, which stated "my office
will allow you to send out this legal packet with your 65 page legal motion as long as it is
addressed to the court or an attorney that is representing you." (Dkt. 90 at ¶ 22). Plaintiff
claims that this letter is a "decision" which "is the result of prison officials applying
regulations in an unconstitutional manner." (Dkt. 59 at 8).

To the extent that Plaintiff alleges that Lepkowski, by responding to Plaintiff's letter
of November 2, 2016, originally addressed to Sheahan, is involved in the alleged
disappearance of Plaintiff's mail, Plaintiff has not set forth any evidence indicating that
Lepkowski engaged in any action by which he sought or effected any alleged deprivation.
Indeed, Plaintiff testified in his deposition that he does not know what happened to his
habeas corpus materials and speculates that the petition was destroyed. (*See* Dkt. 96-5 at
104-05).

Plaintiff has put forth no evidence that would permit a rational jury to find that
Lepkowski denied Plaintiff access to courts or the free flow of Plaintiff's mail. Indeed,
Lepkowski in his response to Plaintiff's complaint that his legal mail was being restricted,
informed Plaintiff that he was permitted to send legal mail to an attorney who represents
him or to a court, which was consistent with DOCCS policy and the limitation imposed as
a result of Plaintiff's disciplinary sentence. (Dkt. 96-6 at 10; Dkt. 96-1 at ¶ 20); *see also*
*Chavis v. Kienert*, No. 9:03-CV-0039(FJSRFT), 2005 WL 2452150, at *11 (N.D.N.Y.

Sept. 30, 2005) ("Plaintiff cannot hold [Defendant] liable for the alleged violation of his constitutional rights simply because he either responded or, conversely, failed to respond, to a complaint." (citation omitted)).  Although Plaintiff stated in his November 2, 2016 letter to Sheahan that Shanno is "a certified paralegal of the State of New York[,]" (Dkt. 96-1 at ¶ 19), Shanno is not a paralegal, and Plaintiff knew that she is not a paralegal or an attorney (Dkt. 96-5 at 59, 103).  The forms that Plaintiff submitted to the mail room did not indicate that Shanno was an attorney or court employee.  (*See* Dkt. 96-3 at 10).  Thus, the evidence presented indicates that Lepkowski was not presented with allegations that amount to a constitutional violation by Southport staff.  Lepkowski declared under penalty of perjury, that he did not intend to interfere with plaintiff's access to courts or free flow of mail.  (Dkt. 96-4 at ¶ 9).

As discussed above, Bates's enforcement of the package limitations on Plaintiff did not constitute violations of Plaintiff's rights of access to courts or free flow of mail.  As such, Lepkowski's letter to Plaintiff informing Plaintiff of his ability to access courts or representation if his mailings are directed to a court or attorney does not constitute a violation of these rights.  *See Chavis*, 2005 WL 2452150, at *11 (concluding that where "no violations of Plaintiff's constitutional rights occurred, there is no need for the Court to consider the extent, if any, of [defendant's] involvement" where defendant ignored complaint from plaintiff).

For all these reasons, the Court finds that Moving Defendants are entitled to summary judgment on Plaintiff's claims against them because a reasonable jury could not find that Moving Defendants denied Plaintiff the right to access the courts or denied the

free flow of mail.  Accordingly, the Court does not reach Moving Defendants' alternative arguments that (1) they are entitled to qualified immunity, and (2) Plaintiff's claims are barred pursuant to *Heck v. Humphrey*, 512 U.S. 477 (1994).  (*See* Dkt. 96-6 at 16-19).

## **CONCLUSION**

For the foregoing reasons, Moving Defendants' motion for summary judgment (Dkt. 96) is granted, and Plaintiff's claims against defendants Bates and Lepkowski are dismissed.

SO ORDERED.

ELIZABETH A. WOLFORD
Chief Judge
United States District Court

Dated:      January 14, 2022
            Rochester, New York